CLARK, C.J., dissenting.
This action was brought to recover the value of certain bonds of the United States, known as Liberty Bonds, which were deposited with the defendant for the purpose of being exchanged for the new bonds to be issued in their stead under the Act of Congress. The exchange was effected by the defendant and the bonds received by it and deposited in its bank, which will hereinafter more fully appear. They were stolen by burglars. Hence this action for their loss. A more detailed account of the facts and incidents (300) of the case seems to be required.
The following is a substantial statement of the facts, as they appear in the record:
Plaintiffs are the Trustees of Elon College, and the defendant is a corporation of Elon College, N.C. engaged in the business of banking and writing, as agent, contracts of insurance. On 15 March, 1920, defendant received from plaintiffs $5,850 in United States Liberty Bonds (of which only $4,400 is here involved) belonging to plaintiffs, to be transmitted by defendant through the Federal Reserve Bank at Richmond, to the United States Treasury Department at Washington, and converted into bonds of the permanent issue and returned to plaintiffs. Plaintiffs offered to pay any expenses incident to the service, but the bank agreed to handle the transaction, as it was its custom, as a matter of accommodation; and further agreed to notify plaintiffs' agent, T. C. Amick, treasurer of the college, upon the return of said bonds. Plaintiffs requested that the shipment be protected by insurance, and the defendant procured such insurance upon the transmission of the bonds from Elon College to Richmond. Of the bonds $4,400 were duly returned, arriving at the postoffice at Elon College on 24 March, 1920, and on that date were receipted for by defendant's cashier, and taken into defendant's safe, where they remained until stolen, as hereinafter set out. On the night of 19 April, 1920, defendant's safe was blown open by persons unknown to the parties, and said $4,400 in bonds, as well as other property, were stolen, and have not been recovered. It had been the custom of plaintiffs to keep their bonds and other valuables in a safe in the main building of the college, and not in defendant's safe. At the time of the burglary the college bonds were deposited in the defendant's safe, where the bank kept its own *Page 320 
Government bonds (which were also stolen), but not in the part thereof where the bank kept its cash and currency. That by the terms of certain insurance policies carried by the defendant, the bank could recover 100 per cent of any loss from the money chest (or burglarproof compartment), but could recover only 10 per cent of any loss from other portions of the vault.
T. C. Amick, treasurer of the college, resides at Elon College, and is a teacher therein, and was at all times a director, vice-president, and local auditor of defendant bank; that on 2 April, 1920, he checked up the books of the bank, and found $5,800 in Liberty Bonds in there, but the books seen by him did not show that any of the bonds belonged to plaintiffs. A certificate or affidavit made by Amick, as auditor of the bank, showing that the bank had $5,800 Liberty Bonds in the vault on 2 April, 1920, was later used by the bank to induce the insurance companies to include the $4,400 of (301) college bonds in the total appraisal of loss sustained by the burglary, a copy of which affidavit is set out in the record. At the time of the burglary the defendant carried two policies of burglary insurance; and in proof of the claim for loss under said policies the converted bonds belonging to plaintiffs, amounting to $4,400, were listed by the defendant as property, or money, for which the defendant was liable, and defendant has received and now has 10 per cent of the said sum, or $440 which it thus received from the insurance companies. If said bonds had been in the burglar-proof compartment where defendant kept its money, the bonds would not have been stolen, or, if stolen, the defendant would have received the full value of the same, or $4,400.
The defendant has tendered the sum of $440 to plaintiffs in full of plaintiffs' claim against it, but the offer has been declined. Defendant still tenders and offers to pay plaintiff said sum of $440.
The case was heard on facts agreed, submitting the controversy without action to the judgment of the court.
The court gave judgment for the defendant, and plaintiff appealed.
After stating the substantial facts: The plaintiffs' counsel contended that, in the consideration of the questions presented herein, certain material facts, which they contend have been admitted, should be kept in mind and control our decision. We will *Page 321 
state, as briefly as possible, the grounds upon which these contentions are laid, in discussing the prominent features of the case.
The bank solicited the business, and by reason of the bank's offer the plaintiffs did forego other safe and convenient methods of transmitting the bonds. The bank held itself out as having safe means of preserving the bonds, plaintiffs asked for insurance that would protect them, offered to pay any expense incident thereto, and defendant is an insurance agent. The bank being in the insurance business, was in a position to know just how fully it was protected, and but for its negligence in acquainting itself with the terms of its own insurance policies might have been, and doubtless would have been, fully protected, instead of being protected only to the extent of 10 per cent. The bank agreed to notify plaintiffs upon return of the bonds. It negligently failed for twenty-six days to do so. If it had done so the plaintiffs would have taken them from the bank and placed them in the safe of the college, "where it was the custom for the college to keep its bonds." The college safe was not robbed. The bank did not keep these bonds where it kept its money, and if it had, they would not have been stolen, (302) or, if they had been stolen, the bank would have recovered from the insurance company 100 per cent of such loss. The bank, at the time of the loss, acknowledged its liability, and recovered $440 insurance money by solemnly declaring its liability. It still has this money. It has never offered to return the money to the insurance company, but instead offers it to plaintiffs, and avers that it is liable only to this extent. These are some of plaintiffs' contentions.
It is thus well said, in an interesting note by the late Judge Freeman, to be found in 38 Amer. State Rep. 733: "A very important part of the business of every bank, whether private or incorporated, consists of acting as agent or bailee for its customers." It was at one time held by some courts that such services were outside the scope of authority of banking institutions, but all doubt about their property has been removed by such well considered opinions as First National Bank of Carlisle v. Graham,100 U.S. 699, and Third National Bank v. Boyd, 44 Md. 47.
While it is a general rule that an accommodation bailee is liable only for gross negligence, the courts in nearly all recent cases have held that a stricter degree of care is required of banking institutions receiving articles of more than usual value, and holding themselves out as having special facilities for their transmission and safe keeping. In fact, they are not accommodation bailees, for "while a bank may not receive any direct compensation for its service, it obtains advantages therefrom in attracting and retaining clients." *Page 322 
Note, Isham v. Post, 39 A.S.R. 781. In the case of Levy v. Pike, 25 La. Ann. 630, the Court, discussing a case somewhat similar to this, substantially said: "Their object was doubtless to increase their deposits, and, of course, enhance their profits; and to accomplish it they held themselves out to the business community as prepared to take care of their valuable boxes. The taking care of their boxes was a part of the business of the bank, by which they doubtless induced cash deposits and made considerable profit. We, therefore, do not regard the deposit in question as only a gratuitous one. Something more than no gross negligence or fraud was expected from the defendants. They were bound to exercise such diligence as prudent bankers would exercise in taking care and preserving a thing of that character deposited with them." Since banks hold themselves out as having unusually safe and convenient means of transmitting and keeping Liberty Bonds and other valuable securities, as well as money, and since such institutions at such small cost can obtain indemnity that will absolutely protect them, the courts have come to apply to them a measure of liability which has been invited by them, to wit, the rule of the ordinary prudent man in like (303) circumstances; or to be more specific, the care that a prudent and diligent banker would give his own property or securities of like value and importance. As has been said, the assertion that banks are liable for gross negligence only is well calculated, if generally accepted as such, to thwart the only purpose for which such a deposit is ever made. Banks are instituted, and their buildings constructed, for the delivery in, and safe keeping of, money and money securities; and these bonds were deposited in defendant's bank for greater security of the bonds, that is, for safe keeping.Whitney v. National Bank, 55 Vt. 155; Isham v. Post, 38 A.S.R. 780, and note. Schouler, in his recent work on Bailments and Carriers, sec. 35, after stating that a gratuitous bailee is liable only for slight care and diligence, according to the circumstances, and cannot be held for loss or injury, unless grossly negligent, says: "This statement of the rule, though strongly buttressed upon authority, fails at this day of universal approval in our jurisprudence." The same author says that what is negligence or gross negligence depends largely upon the value of the property, and upon business usage, and the attendant facts. This Court, in Hanes v. Shapiro, 168 N.C. 28, treating of this question, brings our State into line with the majority of jurisdictions, by saying: "But, in the last analysis, the care required by law is that of the man of ordinary prudence. This is the safest and best rule, and rids us of the technical and useless distinctions in regard to the subject." And this case is quoted with *Page 323 
approval in Perry v. R. R., 171 N.C. 158. It is evident that the so-called distinctions between slight, ordinary and gross negligence over which courts have perhaps somewhat quibbled for a hundred years, can furnish no assistance. Maddock v. Riggs, 106 Kan. 108; 12 A.L.R. 221. The care must be "commensurate care," having regard to the value of the property bailed and the particular circumstances of the case. Hanes v. Shapiro, supra.
The Supreme Court of the United States, in the case of Prestonv. Prather, 137 U.S. 604, held that banks, acting as bailees, without reward, in the care of special deposits, are bound to exercise such reasonable care as men of common prudence bestow upon the protection of their own property of a similar character. The theory that the bailee's care of his own property is a satisfactory test of his duty to a bailor has also been rejected. It is now the law that the bailee must take such care of his property as prudent and careful business men generally take of property of like value and importance. Any other rule would put a premium upon negligence and carelessness. The modern rule is well stated in Maddock v.Riggs, 106 Kan. 808, 12 A.L.R. 219, and is, in substance this, that while many respectable authorities may be found which regard such a showing as the true test in determining (304) whether there has been gross negligence, the better rule is that taking such care of the property, or thing, as of one's own, repels a presumption of gross negligence, but this may be overcome and liability fastened upon the bailee, nevertheless, by showing the failure to exercise the care that under all the circumstances was required of him, because, manifestly, one may take risks with his own property, that he has no right to take with another's, and because it is not a question of the care exercised by him as an individual merely, but as one of a class. In 3 R.C.L. 102, it is well said that a gratuitous bailee will not be permitted to absolve himself from all responsibility for the care of an article bailed, merely by proving that he has been likewise grossly negligent with his own goods. See, also, 6 C.J. 1119, sec. 57 and 59.
In Boyden v. Bank, 65 N.C. 19, is found an expression which is relied on by defendant, that a bank "is bound only to keep a (special) deposit with the same care that it keeps its own property of like description." Of course, the Court did not mean to make that bald statement, that a bank can be negligent with its own property, and be excused from responsibility for that of another, because the latter was held by it as bailee and dealt with in the same manner as was its own. In the old case of Doorman v. Jenkins
(1834), the plaintiff proved the delivery of the money to the defendant for the *Page 324 
purpose of taking up a bill. The defendant was the proprietor of a coffee house, and the account he gave of the loss was that he unfortunately placed the money in a cash box which was kept in the taproom, and that the cash box with the plaintiff's money in it, and also a larger sum belonging to the defendant, was stolen from its place of deposit on a Sunday. Lord Chief Justice Denman, a very eminent and learned jurist, said in his charge, it did not follow, from the defendant's having lost his own money, at the same time as the plaintiff's that he had taken such care of the plaintiff's money as a reasonable and prudent man would ordinarily take of his own. The case is reported in 2 Ad. El. 256 (111 Eng. Reprint 99), where the action of the court in leaving the question, whether there had been culpable negligence, to the jury, was approved. See, also, Coggs v. Bernard, 2 Ld. Raym. 909 (92 Eng. Reprint 107), 1 Smith, Lead. Cas. 199.
We dealt with this question in Marks v. Cotton Mills, 135 N.C. 287, and Hanes v. Shapiro, supra. In the Marks' case we held that an employer in respect to machinery and appliances was not exonerated from liability for an injury received by his employee, while using a machine or appliance, simply because he exercised that degree of care which he would have used if he had been supplying them for his own use, but that he must have been as careful of his employee as a man of ordinary prudence would have been (305) if he was himself exposed to injury, and having regard for his own safety. The principle, as to negligence, is practically the same in both of the classes.
Reverting to the agreed facts in the case at bar, plaintiffs contend that the defendant has admitted five important things:
(1) It received the bonds as bailee, and is unable to return them.
(2) It was directed to insure the bonds, but carried only 10 per cent insurance on them.
(3) It failed for a period of twenty-six days, contrary to express agreement, to notify plaintiffs that the bonds had been returned.
(4) It failed to keep the bonds in the burglar-proof compartment of its safe, where there was 100 per cent safety and 100 per cent insurance.
(5) It virtually admitted to its insurance company that it was liable for the loss, and has received as insurance money, and retains, 10 per cent of the amount of the loss.
As to the first proposition, it seems to be well settled law in this jurisdiction, and generally, that when it is shown that the property *Page 325 
in question has been delivered to the bailee, and is not returned, or cannot be returned, there is a prima facie case made for the bailor which is sufficient to carry the case to the jury and to authorize a verdict for him. 3 R.C.L. 150-151; Hanes v. Shapiro, supra; Sprinkle v. Brimm,144 N.C. 401.
There is some reference in the briefs, and also in the argument before us, to the question of insurance, that is, as to the duty of the defendant to have kept the bonds insured to their full value in compliance with a request to that effect made by the plaintiffs, but we need not enter at large upon the consideration of this question, as we will briefly refer to it later in our conclusion as to the present disposition of the case; and in the same category must be placed the reference to the notice by defendant to plaintiffs of the arrival of the new bonds, it being contended as to that feature of this case that the doctrine of Martin v. Culbertson, 64 N.C. 328, applies, where it is held by the Court: "Where there is any material departure from the terms of the bailment, the bailee becomes a wrongdoer, and is liable for any injury which results from the departure, without regard to the question of negligence." And in this connection they also rely on 6 Corpus Juris, 1110 and 1111, as stating the rule of the most recent authorities, viz.: Where there is an express and valid contract the terms thereof control, since both bailor and the bailee are entitled to impose on each other any terms they respectively may choose, and their express agreement will prevail against general principles of law applicable in the absence of such an agreement. The bailee is liable for loss resulting from breach of his contract to keep the property in a particular manner, or to return it at a particular time, or other special stipulation in regard to (306) the property, without regard to whether he has been otherwise negligent. They refer also to Carll v. Goldberg, 110 N.Y.S. 318;Cochran v. Walker, 49 S.W. 403; Sprinkle v. Brimm, 144 N.C. 401.
Plaintiffs contend further that the defendant kept the bonds in the wrong place — an unsafe place — while it kept its own money in the "money chest," which proved to be a safe place for it, but this matter also may be deferred for additional treatment in our conclusion, and also the contention that defendant has virtually admitted its liability by collecting the $440 from the insurance company upon its representation, expressed or implied, that it was, at least to that extent liable to the plaintiffs.
We come now to the conclusion of the law upon all these matters and variety of contentions.
The concise question necessarily involved in this case is whether the defendant, as bailee of the bonds, has exercised that care which *Page 326 
the law requires of it, in the custody and preservation of them, and whether it gave the notice of their arrival at its banking house, and in other respects complied with the contract of bailment. We find ourselves unable to determine these questions and to decide fairly and correctly as to the rights of the one party, or the liability of the other, upon the case agreed as we find it to be in the record. Whether there has been negligence in the performance of any legal duty is generally a composite question of fact and law, and is in this case, as in nearly all others, one for the jury to decide under proper instructions from the court. The admissions of the parties, as stated in this case, are not so conclusive in their character, and not so comprehensive as to present the naked question of law, whether the defendant has broken the contract of bailment and the plaintiffs have been thereby proximately injured. We can well conceive of other elements or facts and circumstances additional to those stated in the case, which may well enter into the proper solution of this central and controlling question. The defendant does not expressly or impliedly admit its negligence, but denies it strenuously and conversely. The plaintiffs do not expressly or impliedly admit that there was no negligence. Neither could safely make such an admission. It would end the case against it (the bank or the college) should either be so indiscreet as to make the admission. Negligence is preeminently a question for a jury, with proper advice from the court as to the law, to pass upon, as the existence or nonexistence of it in the particular case depends upon the special facts and circumstances — and all of them.
We do not assert that the facts and circumstances cannot (307) be so stated as to determine the rights and liabilities of the respective parties, but they are not apt to be, as it might require too grave and serious an admission, if not a fatal one, on the part of one or the other of the litigants. Sufficient it is to state that such a case is not presented here. The parties have selected the wrong method of presenting the true question involved in the case, or, to state it another way, they have not stated exhaustively all the facts and circumstances essential to a decision of the pivotal issue, whether there has been negligence.
We hold, though, that there is evidence of a consideration for the bailment, and if the latter is found by the jury to exist, the measure of care which the law requires to be exercised by the bank would be that of an ordinarily prudent person in like circumstances, and not merely slight care, and its responsibility would consequently arise without the presence of gross negligence.
The facts recited by us in this opinion, and partially repeated *Page 327 
elsewhere, are evidence of negligence indisputably, but only evidentiary in character, as the ultimate fact of negligence is not stated in the case, and whether the notice was given, or if given, whether the plaintiffs would have removed the deposit before the theft are also, and at least, but matters of fact, as is the question whether the plaintiff had actual knowledge that the bonds had come (Bank v. Burgwyn, 110 N.C. 267) and were in the bank for them, or their order, thereby dispensing with notice. We do not decide such questions, but only questions of law. A case agreed must state all the facts necessary to a decision, which this case does not do. In this, if not in other respects, the agreed case lacks completeness. This must be so, unless whether there is negligence, is not a mixed one of law and fact.
For the reasons given, the case is remanded, with directions to submit it to a jury to find as to the question of negligence, upon all the evidence, unless the parties agree to a reference for that purpose, or unless they can, and will, amend their case so as to present the bare question of law, which they are not likely to do.
Error, and remanded with instructions.