GURNEY P. HOOD, COMMISSIONER OF BANKS, EX REL. CENTRAL BANK AND TRUST COMPANY v. BOARD OF FINANCIAL CONTROL AND COUNTY OF BUNCOMBE, AND GURNEY P. HOOD, COMMISSIONER OF BANKS, EX REL. CENTRAL BANK AND TRUST COMPANY v. BOARD OF FINANCIAL CONTROL AND CITY OF ASHEVILLE.

(Filed 29 June, 1932.)

1. **Banks and Banking H c—Commissioner of Banks is entitled to possession of all assets of insolvent bank taken over by him.**

   The Commissioner of Banks taking over the assets of an insolvent bank as successor to the Corporation Commission, is entitled to the possession of all the assets of such insolvent bank for the purposes of liquidation.

2. **Banks and Banking C d: Pledges A a—Where bonds given to secure deposit are placed in safety deposit box the delivery is sufficient for pledge.**

   Where a bank delivers certain of its bonds and securities to a municipal depositor in order to secure deposits, made from time to time, and the

bonds and securities are delivered to the depositor by the bank's author-
ized officers or employees and placed in a safety deposit box in the bank
by such depositor in the presence of the bank officers or employees, the
depositor having an individual key and the bank a master key and the
simultaneous use of both keys being necessary to open the safety deposit
box: *Held*, after the placing of such securities in the depositor's safety
deposit box they could not be removed therefrom by the bank or its
officials, and the delivery to the depositor was unconditional and suffi-
cient to constitute a valid pledge.

3. **Same—Fraudulent Conveyances A c—Where pledgee has no knowledge
of debtor's insolvency the pledge may not be set aside for fraud.**

Where a city and county deposit public funds in a bank and take from
the bank as security for the deposit certain bonds, notes, etc., and there
is evidence that the city and county, relying on the pledged security,
made large deposits in the bank and drew thereon and that their checks
were honored until a few days before the bank closed its doors, and there
is no evidence tending to show that the city or county knew of or had
reasonable grounds to believe that the bank was insolvent at the time
the securities were pledged: *Held*, the evidence is insufficient to support
a finding by the trial judge that the pledge of the securities by the bank
constituted an unlawful preference and was a fraud on other creditors
of the bank, and his judgment that the Commissioner of Banks was
entitled to recover the pledged assets will be reversed, and the fact
that the bank was insolvent at the time and that its officials knew or
should have known of its insolvency would not affect this result, and the
fact of continued deposits by the county and city is not evidence of
fraud on their part.

4. **Banks and Banking C d—Bank has authority to pledge assets to secure
deposits by cities and counties.**

A bank has power to pledge its notes, bonds and securities to secure
deposits by a city or county, and where the power has been properly
exercised and is not fraudulent as to other depositors and creditors the
pledge is valid and will be upheld as against the Commissioner of Banks
taking over its assets upon its later insolvency.

APPEAL by defendants from *Sink, J.*, at January Term, 1932, of BUN-
COMBE. Reversed in both appeals.

The above entitled actions were begun in the Superior Court of Bun-
combe County on 23 July, 1931.

In each of said actions, the plaintiff alleges that he is the owner and
is entitled to the possession of certain notes, bonds and securities, which
are described in his complaint in said action, and which are now in the
possession of the defendants therein. He prays judgment in each action
that he recover of the defendants the notes, bonds and securities described
in the complaint therein.

The defendants in each action deny that the plaintiff is the owner
and is entitled to the possession of the notes, bonds, and securities de-

scribed in the complaint therein, and allege that they are the owners and are entitled to the said notes, bonds and securities. They pray judgment that the plaintiff recover nothing of the defendants in said action, and that defendants go without day and recover of the plaintiff their costs.

When the actions were called for trial at the January Term, 1932, of the Superior Court of Buncombe County, they were consolidated, by consent, for purposes of trial. A trial by jury was expressly waived, and it was agreed that the judge should hear the evidence, find the facts therefrom, and on the facts found by him, render judgment in each of said actions. The actions were thereupon tried in accordance with this agreement.

On the facts found by the judge, and in accordance with his conclusions of law, it was ordered, considered and adjudged by the court that the plaintiff is the owner and is entitled to the possession of the notes, bonds and securities described in the complaint in each of said actions, and that he recover of the defendants therein the said notes, bonds and securities, together with his costs in said actions.

From the judgment in each of said actions, the defendants therein appealed to the Supreme Court, assigning errors in the findings of fact and in the conclusions of law on which said judgment was rendered.

*Johnson, Smathers & Rollins, Thos. D. Johnson and Alfred S. Barnard for plaintiff.*

*Jones & Ward, C. K. Hughes and Merrimon, Adams & Adams for defendants.*

CONNOR, J. The Central Bank and Trust Company is a corporation organized under the laws of the State of North Carolina. For many years prior to the date on which the said corporation closed its doors, and ceased to do business, because of its insolvency, to wit, 19 November, 1930, it was engaged in a general banking business, as authorized by the laws of this State, in the city of Asheville, in the county of Buncombe, and State of North Carolina. While it was engaged in such business, the said corporation was under the general supervision of the Corporation Commission of North Carolina, and was subject to examination, from time to time, by said Commission, with respect to the conduct of its business. After the Central Bank and Trust Company admitted its insolvency, and for that reason suspended business on 19 November, 1930, the Corporation Commission took charge of its affairs, and proceeded to liquidate its assets, as authorized by chapter 113, Public Laws of North Carolina, 1927. Since the amendment of said statute by chapter 385, Public Laws of North Carolina, 1931, the title

to all the assets of the Central Bank and Trust Company has vested in the plaintiff, Gurney P. Hood, Commissioner of Banks, as the statutory successor of the Corporation Commission. The plaintiff is now entitled to the possession of all the assets of the Central Bank and Trust Company for purposes of liquidation and distribution among the depositors and other creditors of said corporation.

The notes, bonds and securities, which are the subject-matter of the above entitled actions, were deposited from time to time, prior to 19 November, 1930, in safety deposit boxes in the vault of said company. Prior to said deposits, the said notes, bonds and securities were owned by the Central Bank and Trust Company and constituted a part of its general assets. They were deposited in said safety deposit boxes, pursuant to agreements in writing entered into by and between the Central Bank and Trust Company, and the county of Buncombe and the city of Asheville, on 2 February, 1928, and 1 August, 1929, respectively, as security for deposits of money made from time to time, by the said county and city with the Central Bank and Trust Company. After the Central Bank and Trust Company suspended business, because of its insolvency, on 19 November, 1930, and after its affairs had been taken in charge by the Corporation Commission of North Carolina, officials of the county of Buncombe and of the city of Asheville, with the consent of the liquidating agent of the said Corporation Commission, removed from the safety deposit boxes assigned to said county and to said city, respectively, the notes, bonds and securities, described in the complaints in these actions, and subsequently delivered the same to the defendant Board of Financial Control, which now holds said notes, bonds and securities, for collection, under and pursuant to the provisions of chapter 253, Public-Local Laws of North Carolina, 1931. The Central Bank and Trust Company, at the time it suspended business, because of its insolvency, had on deposit to the credit of the county of Buncombe and to the city of Asheville, respectively, large sums of money, which have not been paid, and which are now due by the Central Bank and Trust Company to said county and to the said city.

On the facts found by him in each of the above entitled actions, the judge concluded, as matters of law:

"1. That there was not such unconditional delivery of said collaterals as to constitute a valid pledge;

2. That the attempt to pledge said collaterals, under the circumstances disclosed by the evidence, constituted an unlawful preference;

3. That the attempted pledge of said collaterals, under the circumstances disclosed by the evidence, was a fraud upon the other creditors of the Central Bank and Trust Company."

There is no evidence on the record in this appeal to support the findings of fact on which the judge concluded as a matter of law that there was not such an unconditional delivery of the notes, bonds and securities which were deposited in the safety deposit boxes in the vault of the Central Bank and Trust Company, and which were in said boxes when said company suspended business, because of its insolvency, as to constitute a valid pledge of said notes, bonds and securities, to the county of Buncombe and to the city of Asheville, respectively, as security for their deposits with the Central Bank and Trust Company, at the date of its admitted insolvency.

All the evidence is to the effect that said notes, bonds and securities were segregated, from time to time, from other assets of the Central Bank and Trust Company, by one of its officers or employees, acting in its behalf, and after the specific approval of officials of the county or of the city, as the case might be, were deposited in safety deposit boxes assigned by the company to the county or to the city, respectively, in the presence of such officials. After notes, bonds and securities had been deposited in said safety deposit boxes, they could not be removed therefrom by the company, or by any of its officers or employees; they could be removed only by officials of the county or of the city, as the case might be, who had been specifically designated by the governing body of the county or of the city for that purpose. The safety deposit boxes were so constructed that each box could be opened only by the simultaneous use of the master key, which was retained by the company, and the individual key, which was at all times in the possession of the county or of the city. The procedure for the opening of the safety deposit boxes which were assigned to the county and to the city, was identical with that by which other customers of the company, who rented safety deposit boxes from it, opened their boxes, and thereby had access to their contents.

In *Morgan v. Bank,* 190 N. C., 209, 129 S. E., 585, it is said:

"The decided weight of authority is to the effect that the relationship between a bank and its customer, resulting from the rental by the former to the latter of a safety deposit box, with respect to the contents of said box, placed therein for safe-keeping, is that of bailor and bailee, the bailment being for hire or mutual benefit. *Trustees v. Banking Co.,* 182 N. C., 298, 109 S. E., 6, 17 A. L. R., 1205; the fact that the safety deposit box can be unlocked and opened, and access had to its contents only by the joint action of the customer, who has possession of the individual key, and of the bank, which has possession of the master key, does not affect the character of the relationship. The ownership of the property deposited in the safety deposit box remains in the customer;

under the contract it must be kept in the place designated and agreed upon by the parties, to which access can be had only by their joint action. The place in which the property shall be kept is not to be determined solely by the bank."

In the instant case all the evidence shows that there was a delivery of the notes, bonds and securities described in the complaints in these actions, after they had been segregated from other assets of the Central Bank and Trust Company, and after they had been endorsed in blank by said company, to officials of the county of Buncombe and of the city of Asheville, and that after such delivery the said notes, bonds and securities were deposited in safety deposit boxes in the vault of the Central Bank and Trust Company in the presence of one of the officials or employees of the company, and in the presence of officials of the county or of the city. Neither the county nor the city forfeited its rights to said notes, bonds and securities, by reason of such deposit. They remained in said safety deposit boxes at all times after they were deposited therein, until they were removed therefrom by officials of the county and of the city, after the Central Bank and Trust Company suspended business because of its insolvency. Nothing else appearing, the defendants are now the owners and entitled to the possession of said notes, bonds and securities. *Bundy v. Credit Co.,* 202 N. C., 604, 163 S. E., 676.

The contentions of the defendants on their appeal to this Court that there was no evidence at the trial of these actions to support the findings of fact on which the judge concluded as matters of law that the pledge of the notes, bonds and securities, which are the subject-matter of these actions, to the county of Buncombe and to the city of Asheville, constituted an unlawful preference, and was a fraud on other creditors of the Central Bank and Trust Company, are sustained.

It may be conceded that there was evidence tending to show that the Central Bank and Trust Company was insolvent, within the statutory definition of that term (C. S., 216(a), at the dates on which the notes, bonds and securities were pledged, and that there was also evidence tending to show that officials of said company knew of its insolvency at said dates. This evidence alone is not sufficient to support the findings of fact on which the judge concluded as matters of law that the pledges were made in order to give the county of Buncombe and the city of Asheville an unlawful preference, or that the pledges were frauds on other creditors of the company. All the evidence shows that both the county of Buncombe and the city of Asheville, relying upon the pledges, maintained large deposits with the Central Bank and Trust Company, which enabled the said company to continue in business, and meet the

demands of other depositors and creditors. There was no evidence which showed or tended to show that the governing body of the county of Buncombe, or the governing body of the city of Asheville knew or had reasonable grounds to believe that the said company was insolvent, at the dates on which the said governing bodies accepted the notes, bonds and securities as security for their deposits with the Central Bank and Trust Company, or at the dates when they made such deposits with said company. All the evidence shows that every check drawn on the Central Bank and Trust Company by the county of Buncombe or by the city of Asheville was paid upon presentation, until a few days before the Central Bank and Trust Company suspended business. The continued deposits of money derived from the collection of taxes, and from the sale of tax anticipation notes, issued by the said county and the said city, under statutory authority, was no evidence of fraud on the part of said county or of said city. In the absence of knowledge on the part of the governing body of the county of Buncombe, or of the governing body of the city of Asheville, that the Central Bank and Trust Company was insolvent, at the dates said governing bodies accepted the pledge of the notes, bonds and securities deposited in the safety deposit boxes, there was no fraud on the part of said county or of said city which rendered such pledges void.

There was no contention by the plaintiff in these actions that the Central Bank and Trust Company was without power to pledge notes, bonds and securities owned by said company, and constituting part of its general assets, as security for deposits of money made with said company, from time to time, by the county of Buncombe or by the city of Asheville. This power is conceded. *Trust Co. v. Rose,* 192 N. C., 673, 135 S. E., 795. It was expressly conferred by statute (chapter 480, Public-Local Laws of North Carolina, 1927), and was recognized by the General Assembly of this State in the enactment of chapter 253, Public-Local Laws of North Carolina, 1931. The contention of the plaintiff is that the power was not exercised with respect to the notes, bonds and securities which are the subject-matter of these actions; or if so, that it was exercised fraudulently, and with the purpose that the county of Buncombe and the city of Asheville should have an unlawful preference over other creditors of the Central Bank and Trust Company.

As neither of these contentions can be sustained upon the facts disclosed by all the evidence, the judgment in each action must be

Reversed.