CITY OF FAYETTEVILLE v. SPUR DISTRIBUTING COMPANY, INC.

(Filed 13 December, 1939.)

**1. Municipal Corporations § 37—Municipal ordinance regulating storage of gasoline in fire district held to relate to public safety.**

A municipal ordinance prohibiting storage of gasoline within the fire district of the city in tanks with a capacity greater than 4,500 gallons bears sufficient relationship to the public safety to come within the police power of the municipality, C. S., ch. 56; Michie's Code, 2673, 2676, 2776 (r), at least for the purpose of sustaining a finding to that effect upon the hearing of an order to show cause why a temporary order restraining the violation of the ordinance should not be continued to the hearing.

**2. Pleadings § 29: Appeal and Error § 40b—**

A motion to strike certain allegations from a pleading is made as a matter of right if made in apt time, and at other times it is addressed to the discretion of the court, but in both instances it is subject to review, since the power of the court must be exercised in accordance with legal principles and established procedure.

**3. Same—**

In a proceeding to enjoin a violation of a municipal ordinance regulating the storage of gasoline within the fire district of the city, the granting of a motion to strike allegations from the answer as to what had been permitted in this respect by other cities, will not be held for error, since the granting of the motion does not prejudice defendant or deprive it of any defense it might have.

**4. Municipal Corporations § 40—**

The fact that the violation of a municipal ordinance is made a misdemeanor does not preclude the municipality from enjoining its violation when the ordinance relates to the public safety, health or welfare, since in such instance prosecutions for its violation may not afford an adequate remedy, and the injunctive relief will lie, not for the purpose of preventing a crime, but to maintain a right.

**5. Municipal Corporations § 36—**

The fact that an ordinance is enacted under the police power of a municipality establishes *prima facie* that the acts prohibited are nuisances, the resort to the police power being an inferential declaration to this effect.

**6. Municipal Corporations § 40—**

The provision of section 8, chapter 250, Public Laws of 1923 (Michie's Code, 2776 [y]), confers jurisdiction upon the courts beyond the scope of the ordinary equity jurisdiction in enjoining the creation of a nuisance and provides a statutory injunction to prevent the violation of municipal ordinances enacted in the exercise of the police power.

**7. Same—Municipality may enjoin violation of its ordinance even though the act prohibited is not a nuisance per se.**

The right of a municipality to enjoin the violation of an ordinance is not limited to instances in which the act prohibited is a nuisance *per se,*

but the question is whether the act or thing prohibited is a nuisance in fact under the existing conditions, so as to give the court jurisdiction to grant the relief sought under the provisions of Michie's Code, 2776 (y), and an ordinance prohibiting the storage of gasoline within the fire district of the city in quantities in excess of 4,500 gallons bears a sufficient relationship to the public safety to warrant the court in continuing a temporary order restraining the violation of the ordinance to the final hearing, at which time the question of whether the particular act contemplated by defendant involves the public safety so as to bring it within the legitimate scope of municipal regulation may be determined.

APPEAL by defendant from *Burney, J.,* at Chambers, June Term, 1939, of CUMBERLAND.    Affirmed.

The plaintiff brought this action against the defendant to permanently enjoin the latter from constructing and establishing a gas storage tank of 15,000 gallons capacity in the city fire district, contrary to the city ordinance.

It is alleged in the complaint that the proposed site of the storage tank is not only within the fire district but in a very populous part of the city, and that its installation and maintenance "will create a most dangerous public nuisance and will seriously impair the safety of the citizens using this arterial highway and street and imperil the lives of the multitude of citizens frequenting the theatre, hospital and other points where great throngs gather and which are situated in and near this location." It is further alleged that the site upon which the defendant wishes to locate the tank has been set apart by particular description and recognized by the State Fire Insurance Department and rating bureau of the fire insurance companies doing business in the State as being a high-class business district with special restrictions and regulations as to fire insurance rates and costs to insurers, and that the location of the tank at this point will of itself create a particularly dangerous hazard to the business district of the entire city, and that the storage of inflammables therein "will become immediately a most dangerous nuisance to both persons and property and make fire control in the business district most difficult and uncertain." It is further alleged that the presence, use, and maintenance of any storage tank of 10,000 gallons or more capacity "would create a most dangerous nuisance, unwarranted by circumstances and not in any manner contemplated by the zoning regulations of the city or authorized within the fire limits for fire control authorities."

It is further alleged "that an ordinance of the city of Fayetteville prohibits the use of tanks for gasoline storage within the fire district limits of a capacity greater than 4,500 gallons upon any one location."

The Spur Distributing Company, defendant, answered admitting only the formal allegations of the complaint and the fact that it was the

intention of the defendant to "erect, operate and maintain on the location described in the complaint, a retail service station; and to that end will install, in accordance with the rules, regulations and specifications of the National Board of Fire Underwriters, and in conformity with any and all State regulations, a modern and scientifically constructed underground tank, with the latest approved safety appliances, for the storage of gasoline, with a capacity of 15,000 gallons," which gasoline tank is to be filled by unloading and piping directly from a tank car stationed on a spur track of the Atlantic Coast Line Railroad Company, near the proposed site for said filling station.

The answer denies that the construction and maintenance of these facilities for the handling of gasoline would bring about a dangerous condition or constitute a nuisance, and points out that the method of handling the gasoline would reduce a hazard now existing because of the method of unloading and operation of other filling stations within the fire limits.

Defendant further alleges that subsequent to the issue to it of a building permit for the construction, maintenance, and operation of a filling station, the board of aldermen of the city "adopted an ordinance which undertakes to prohibit the use of tanks for the storage of gasoline within the fire district of the city of Fayetteville with a storage capacity greater than 4,500 gallons," a copy of which is attached to the answer. The defendant complains that the ordinance, with amendments thereto, is unconstitutional and void as being based upon no reasonable grounds, but predicated upon conjecture and apprehension of danger without adequate foundation in fact. It is alleged that the ordinance, as amended, is "unreasonable, arbitrary, discriminatory and capricious; and deprives this answering defendant of conducting a lawful business; and unlawfully deprives this answering defendant of the use and occupancy of its property, without due process of law; and denies this answering defendant equal protection of the law, in contravention of Amendment 14, Section I, of the Constitution of the United States, and the amendments thereto; and Article I, section 17, of the Constitution of the State of North Carolina."

The defendant further alleges that it is now operating about 250 retail service stations in 19 states, in congested areas, and gives a list of such stations, with their locations, within the State of North Carolina.

The exhibits attached to the answer include the ordinance, amendments thereto, building permit, and City Engineer's Certificate.

Upon the hearing, the defendant moved to dismiss the action for the following reasons, which we give in summary: First, that the acts set forth in the complaint, if true, are made a misdemeanor by the provisions of the city ordinance adopted 1 May, 1939, and amended 8 May,

1939; second, that the acts complained of, as appear from the face of the complaint, would be a violation of the ordinance against the storing of gasoline within the fire limits of the city in tanks of more than 4,500 gallon capacity, and that since this ordinance provides that the violations of the same shall be punishable as misdemeanors, the acts complained of would constitute criminal offenses and cannot be enjoined; and, third, that it appears upon the face of the complaint that the plaintiff has a complete and adequate remedy at law, and, therefore, cannot invoke the intervention of a court of equity.

This motion was overruled, and defendant excepted.

Plaintiff moved to strike out the first paragraph of defendant's second and further defense. Motion was allowed and defendant excepted.

The court, thereupon, heard evidence of the plaintiff and defendant addressed to allegations in the complaint and answer, upon which evidence, and upon formal admissions in the pleadings, the judge made pertinent findings of fact and conclusions of law, among which are the following: "That the handling, storing and conveying from tank cars by pipe of gasoline in large quantities of 15,000 gallons is dangerous, and while not a nuisance *per se* might easily become one from the way the said tank was stored, or the way that the gasoline in such large quantities, to wit, 15,000 gallons, would be piped or transferred to said tank."

Upon the evidence and the facts found, the judge continued the injunction to the hearing, and from this judgment the defendant appealed, assigning errors.

*D. M. Stringfield and G. S. Quillin for plaintiff, appellee.*
*Tompkins & Tompkins and Rose & Lyon for defendant, appellant.*

SEAWELL, J. The defendant did not argue, either in the brief or in the oral argument, the constitutional questions raised in its answer relating to the propriety of the exercise of the police power in the regulation of its business. Inasmuch, however, as this question may have some bearing upon other matters involved, we may say that the power of a municipality to make proper ordinances for the protection of the health, safety, and welfare of the people is derived from chapter 56 of the Consolidated Statutes, relating to municipal corporations, and C. S., secs. 2673, 2676, and 2776 (r), (Michie's Code), may be considered as pertinent. In this instance the existence of a danger to the public, enhanced by the proposed location of the storage tank in a congested area within the fire district in the business part of the city, would sustain a finding, at least for the purpose of passing on the order to show cause, that the business is affected with a public interest justifying resort to the police power in its regulation, and that the restrictions

provided in the statute have a proper relation to the evil sought to be remedied. *Nebbia v. New York,* 291 U. S., 502, 78 L. Ed., 940; *Shuford v. Waynesville,* 214 N. C., 135, 198 S. E., 585.

The defendant bases its argument for reversal upon three propositions: First, that a municipal corporation has no power to invoke the extraordinary remedy of injunction to prevent a threatened violation of one of its ordinances; second, that the court committed error in striking from defendant's answer the second paragraph relating to use and maintenance of similar stations and equipment in other North Carolina cities; and, third, that the court cannot enjoin an alleged public nuisance when the apprehended injury is at most contingent and speculative and the condition complained of is not a nuisance *per se.*

For a more convenient discussion we take up first the order striking out part of defendant's answer. Such an order, made in apt time, is a matter of right, and at other times it is within the discretion of the court. *Patterson v. R. R.,* 214 N. C., 38, 43, 198 S. E., 364. In both instances it is subject to review, of course, since the power of the court must be exercised in accordance with legal principles and established procedure. In the particular case we do not regard the matters alleged in the stricken paragraph as being relevant to the development of the case, since they refer only to what has been permitted, or what has been done in other cities in the State, and no inference could be drawn from such fact other than that which might appeal to the tolerance of officials, rather than to the enforcement of law. At any rate, we cannot see that the defendant is prejudiced by the elimination of this paragraph or deprived of any defense it might make. *Pemberton v. Greensboro,* 203 N. C., 514, 515, 172 S. E., 196.

Second. Ordinarily, injunction will not lie to prevent the perpetration of a crime. The criminal laws which come into action when intention has ripened into an overt act are deemed sufficient. The criminal law, however, deals with crime as crime—as an offense against the sovereignty of the whole State—and does not look to any objective other than the correction or reformation of the criminal or his removal from the zone of his pernicious influence so that society may no longer be molested with his criminal outbreaks, and the deterring effects of his conviction and punishment upon others like minded. It is not intended, nor is it adequate, to protect society or the individuals or groups within it, or persons within a congested territory, from acts which expose them to special danger or which constitute a menace to the safety, health, and welfare of the community, although indeed these acts may incidentally become violations of law. In order to adequately deal with these evils a resort to the police power should mean more than merely setting in

motion that highly specialized vehicle of its exercise—the criminal law—since in many instances this must be found inadequate to sustain the power.

The fact that an act from which such injury may come, either to a private citizen or to the public at large, is denounced either in an ordinance or in the law as criminal does not immunize its author from other appropriate remedy. Thus, trespass upon land is an indictable offense, but injunction may be maintained to prevent a continuing trespass. Equity is invoked, not to prevent a crime, but to maintain a right.

Third. If in its attempt to enforce its ordinances relating to important subjects of this kind the municipality must be confined to civil actions for collection of the meager penalties prescribed by the ordinances, or to prosecutions under the State criminal law—which, indeed, any citizen might set in motion—where punishment is usually confined to the amount named in the penalty, it must be obvious that such a method will be adequate only when applied to the violation of minor regulations. The subject with which we are dealing—zoning ordinances and similar regulations—has presented a fruitful field of controversy, in which municipalities have experienced great difficulty in enforcement. A number of states have enabling statutes authorizing municipalities to resort to injunction in aid of the enforcement of ordinances of this kind. *Lexington v. Governor* (Mass.), 3 N. E. (2d), 19.

In the 1923 statute (chapter 250, Public Laws of 1923; Michie's Code of 1935, sections 2776 [r], *et seq.*), conferring on municipalities the powers here sought to be exercised by the plaintiff city, similar permission is given to them to resort to the courts for aid in enforcement of appropriate ordinances and for restraint of prohibited acts. Section 8, Session Law cited; Michie's Code, section 2776 (y): "Remedies. In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained, or any building, structure or land is used in violation of this article or of any ordinance or other regulation made under authority conferred thereby, the proper local authorities of the municipality, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business, or use in or about such premises."

Indeed, it has been held that a municipality may resort to injunction for enforcement of its ordinances on subjects of this kind without the necessity of an enabling act. McQuillin on Municipal Corporations (2nd Ed.), section 852, *et seq.; ib.*, section 1911; *Lake Charles v. Lake Charles Railway L. & W. Co.*, 144 La., 217, 80 So., 260-262; *Detroit*

*Building Commission v. Kunin,* 181 Mich., 604, 148 N. W., 207, 210. See also: 43 C. J., section 524, p. 405.

We are aware that the right of the municipality to resort to the State court for injunction in aid of its ordinances has been questioned in *Clinton v. Oil Co.,* 193 N. C., 432, 436, 137 S. E., 183, and in *Elizabeth City v. Aydlett,* 198 N. C., 585, 587, 152 S. E., 681. Neither of these cases, however, was decided on that point, and the statute to which we have referred was not then called to the attention of the Court. See pertinent observation of *Mr. Justice Stacy* in his concurring opinion in *Elizabeth City v. Aydlett, supra,* at bottom of page 588. It may also be said that the statute was not cited in the argument of the case at bar.

There can be no doubt that this statute authorizes the present proceeding; and it may be found to enlarge the scope of the ordinary equity jurisdiction, or to provide a statutory injunction to be applied to acts and conditions ordinarily considered as being beyond equity interference. This much must be kept in mind: The jurisdiction derives from the statute and is not made to depend wholly on a state of facts ordinarily warranting the equity jurisdiction in restraint of nuisances. Since it is directed toward the enforcement of specified municipal powers, it may occur in administration also that the particular power to be aided has no relation to nuisances in the ordinary sense, or to the rules of equity jurisdiction regarding their prevention or abatement; or, if the subject relates to a nuisance, it seems clear that the statute, not the common law, must control the court in the exercise of the jurisdiction which it gives, in as far as it speaks.

The courts have been inclined to pay great deference to municipal ordinances declaring certain acts to be nuisances, and it has been held that the prohibition by ordinances of certain acts, in the exercise of the power to enact ordinances for the welfare of the people, may be regarded inferentially as such a declaration. McQuillin, Municipal Corporations, sections 957, 958, *et seq.* Where the statute in that respect is not arbitrary on its face, it should be considered as, *prima facie,* investing the act or thing with such character. *State v. Trenton,* 53 N. J. Law, 132, 20 Atl., 1076. The question presented is not whether the act or thing is within the category of things which are obviously nuisances, or which have at one time or another been traditionally so regarded, but a question as to whether or not the act or thing is a nuisance in fact under the conditions found. *Shreveport v. Leiderkrantz Society,* 130 La., 802, 58 So., 578.

With regard to the power of municipalities expressed in zoning and similar acts prohibiting the carrying on of certain businesses or activities within a specified area, that power has not usually been limited in its exercise to instances where the facilities, businesses, or activities pres-

ently constitute a nuisance *per se.* While there are cases to the contrary, those so holding will usually be found to have turned upon the fact that the evidence is only speculative and uncertain as to whether the thing will ever become a nuisance. For illustration, while a livery stable has been held by the Supreme Court of the United States and other courts not to be a nuisance *per se (Ex Parte Lacey,* 108 Cal., 326, 41 Pac., 411; *St. Louis v. Russell,* 116 Mo., 248, 249, 22 S. W., 470), it has "long been recognized as a subject necessarily within reasonable police regulation." McQuillin, section 965, and cases cited. So, "an automobile garage is not necessarily a nuisance *per se,* though it may be so conducted as to become such, hence its location, erection, and conduct is plainly within the police power." *Ib.,* section 966. There are instances innumerable where the assertion of the police power through a proper ordinance similar to the one under consideration has been upheld as valid, although the thing sought to be prevented or abated as a nuisance is not so *per se,* but may become so because of the location of the property or the conditions surrounding the business.

In the case at bar we are not faced with any uncertainty. The defendant admits that it intends to install tanks holding 15,000 gallons of gasoline, piping it from the spur track of the railroad in one of the most populous centers of the city, in close proximity to hospitals and hotels, and within the fire district, in contravention of the ordinance, and asks the city to wait until it shall have become a nuisance *per se,* according to traditional classification.

Both *Clinton v. Oil Co., supra,* and *Elizabeth City v. Aydlett, supra,* and cases of a like kind, have been urged upon us as concluding the rights of plaintiff in the case at bar, since they are construed as holding that a filling station is not a nuisance *per se,* and, therefore, not a proper subject for a valid city ordinance restricting use of property. It is pointed out that all these filling stations have tanks for the storage of gasoline. The distinction upon which this ordinance bases its classification regards the storage of gasoline in large quantities as constituting the evil, and we cannot say, as the matter has been presented to us in this case, that the classification is arbitrary. Apart from this, the proposition that a municipality may not, by a proper zoning ordinance equally applicable to all persons and subjects within the restricted area, prohibit the erection and maintenance of filling stations in such particular locality, on the ground that they are not nuisances *per se,* and that the ordinance constitutes an unconstitutional restriction upon the use of property, is not tenable. At least, this Court has not proceeded on that principle for a long time. *S. v. Johnson,* 114 N. C., 846, 19 S. E., 599; *Ahoskie v. Moye,* 200 N. C., 11, 156 S. E., 130; *Shuford v. Waynesville, supra.*

The subject with which the ordinance deals is treated as a nuisance, but it has been pronounced by the court who heard the case as dangerous to the safety of the public, and we do not think that in reaching it the Court is at this time bound by the doctrine of noninterference until the condition has established itself as a nuisance *per se.*

On the hearing upon the merits, the character of the facilities sought to be installed and maintained by the defendant, the method of storing and handling the gasoline, the danger involved, and other matters which might bring it within the legitimate scope of municipal regulation, or exclude it therefrom, may be more definitely determined. At present, we are only concerned with the question whether or not the plaintiff has made a sufficient showing to justify the Court in continuing the restraining order until the hearing on the merits. We think it has.

The judgment refusing to dismiss the action and continuing the injunction to the hearing is

Affirmed.