NORTH CAROLINA BOARD OF PHARMACY v. W. RONALD LANE T/A
LANE'S BROOKLYN PHARMACY AND JOHN W. BALDWIN.

(Filed 9 April, 1958)

1. **Controversy without Action § 2—**

Where the parties submit an action to the court upon an agreed statement of facts, the facts agreed constitute the sole basis for decision.

2. **Constitutional Law § 12: Pharmacy § 1—**

The General Assembly, in the exercise of the police power of the State, may regulate the practice of pharmacy.

3. **Pharmacy § 1—**

G.S. 90-71 and G.S. 90-72, which relate to the same subject matter, are to be construed *in pari materia.*

4. **Same—**

G.S. 90-71 and G.S. 90-72 proscribe the dispensing and selling of drugs, as well as the compounding physicians' prescriptions, by persons not licensed as pharmacists or assistant pharmacists, except under the immediate supervision of a licensed person, and therefore, it is immaterial to the application of the statute that an unlicensed person, in dispensing a drug to a customer on prescription in the absence of a licensed pharmacist or assistant pharmacist, merely takes the designated number of tablets prepared by a manufacturer from a large container and removes them to a small container and delivers them to the customer.

5. **Same—**

The fact that an unlicensed person, in the absence of any licensed pharmacist or assistant pharmacist, in dispensing drugs on a prescription to a customer, has access by telephone to licensed pharmacists in other stores owned by the same employer, does not render his dispensing the drugs permissible under the statute, since the proviso of the statute requires that he act in the immediate physical presence of a licensed pharmacist or assistant pharmacist and under his personal supervision and direction.

6. **Injunctions § 4g—**

Ordinarily, injunction will not lie to prevent the perpetration of a crime.

7. **Same—**

Where a statute expressly provides that the violation of its provisions should constitute a misdemeanor and also provides that the acts therein proscribed might be enjoined, the contention that the violation of an

injunction issued under the statute would subject the offender to punishment for a criminal offense without the constitutional safeguards of indictment, trial by jury, etc., is untenable, since the punishment for violation of the injunction would be for violating an order of the court and not punishment for a crime. Constitution of North Carolina, Art. I, Secs. 12 and 13.

**8. Judgments § 17b—**

> Where an action is instituted to enjoin definite acts proscribed by statute, the injunction issued in the action should be limited to the acts defined, and further provision enjoining defendants from doing any act in violation of the statute is too broad and should be stricken therefrom.

APPEAL by defendants from *Morris, J.,* October Civil Term, 1957, of NEW HANOVER.

Civil action to enjoin defendants from continuing certain acts alleged to constitute violations of GS 90-71 and GS 90-72.

A jury trial was waived. The parties submitted the case upon an AGREED STATEMENT OF FACTS, which, in material part, was as follows:

"FIRST: . . . the plaintiff North Carolina Board of Pharmacy is . . . the duly constituted agency of the State . . . for the purpose of regulating the practice of Pharmacy in . . . North Carolina, . . . and as such agency is authorized to sue in its name.

"SECOND: At all times herein referred to, the defendant W. Ronald Lane . . . owned and operated a drugstore known as Lane's Brooklyn Pharmacy, wherein he employed the defendant John W. Baldwin for the performance of certain duties and services in the prescription department thereof as assistant to and under the direct control of registered pharmacist R. E. Miller. . . . The defendant W. Ronald Lane also owned and operated two other drugstores, to wit, Lane's Market Street Pharmacy, and Lane's Lake Forest Pharmacy, all . . . located in the City of Wilmington, North Carolina. For the purpose of performing the functions of compounding and dispensing prescriptions, selling drugs and medicines, and complying with the laws relating to the practice of Pharmacy, . . . the defendant W. Ronald Lane, as owner and operator of the said three drugstores . . . , employed three registered pharmacists in full and complete charge of the prescription departments of these three stores on a schedule of work so that there were at least two registered pharmacists on duty in at least two of the said drugstores at all times who could be contacted by telephone or by messenger delivery, for consultation and assistance concerning any prescription to be compounded or otherwise filled in any one of the said three stores, but that on the occasions mentioned in the complaint, none of the said registered pharmacists, or any others,

were contacted with regard to the 'prescription' on which this action is based. ·

"THIRD: Under and by virtue of Chapter 90 of the General Statutes of North Carolina, the plaintiff North Carolina Board of Pharmacy has delegated to it by the General Assembly of North Carolina the duties and authority set forth therein, including the duty to carry out the purposes and to enforce the provisions of the said Chapter 90.

"FOURTH: Neither the defendant W. Ronald Lane nor the defendant John W. Baldwin are, or have ever been, either registered pharmacists or assistant pharmacists, within the meaning that the said terms are used in the said Chapter 90 . . .; but the defendant John W. Baldwin, prior to 5 August 1954, had had over 14 years' experience in filling and compounding prescriptions as an aid to and under the supervision of registered pharmacists in the said Brooklyn Pharmacy.

"FIFTH: The 'prescription' which was presented to the defendant John W. Baldwin on 5 August 1954 and on which this action is based, and referred to in paragraph 5 of the complaint as amended, is as follows:

ROBERT T. PIGFORD, M.D.
1015 Murchison Building
Wilmington, N. C.

Reg. No. 3900                                                    Phone 2-1636
Name       Mr. Allen Forrest                                    No.....................
Address    Delco, N. C.
Rx.        CN 758089   8-5-54
           Luminal   gr SS
             #30
           1 tab 2-3 times a day for nervousness

Have This Prescription Filled By
a REGISTERED PHARMACIST at
the Drug Store of your choice.                                  R.T.P.  M.D.

"SIXTH: The defendant John W. Baldwin, who was not then a registered pharmacist, or assistant registered pharmacist, and who was acting as the agent, servant, and employee of the defendant W. Ronald Lane, while the registered pharmacist was temporarily off the premises, received the above set forth 'prescription' for the purpose of supplying the tablets called for therein, and did then and there take from a large size container labeled with the trade name of the said tablets and containing a larger quantity of tablets the number of tablets called for by the said prescription, put the said specified number of tablets in a smaller container which was then delivered

to the 'customer,' and received the purchase money from the 'customer.'

"SEVENTH: The 'prescription' mentioned in paragraph 6 above did not have to be compounded or prepared from a combination of ingredients, but consisted of tablets which had been previously prepared by the manufacturer thereof, and which tablets were themselves ready for delivery to and use by the ultimate consumer except for removal from their container.

"EIGHTH: The facts set forth in paragraphs 6 and 7 above, with relation to the occurrence on 5 August 1954, are the same facts as occurred 'at various other times' referred to in paragraphs 5 and 6 of the complaint as amended; and on none of the occasions referred to in the complaint, and on which this action is based, did the defendants, or either of them, have to compound, or prepare by mixing various ingredients, the items called for by the said 'prescription,' but merely removed the prescribed number of tablets called for in the said prescription by their trade name from the stock bottle ready prepared by the manufacturer and delivered them to the ultimate consumer in the quantity specified on the said prescription.

"As to the tablets called for in the prescription set forth in paragraph 5 above, they are a drug within the meaning of the use of that term in Sections 90-71 and 90-72 of the General Statutes of North Carolina.

"NINTH: With relation to the acts set forth in paragraphs 6, 7 and 8 above, the defendant W. Ronald Lane T/A Lane's Brooklyn Pharmacy, as employer of the defendant John W. Baldwin, caused or permitted the said acts to be done by his said employee.

"TENTH: The defendant W. Ronald Lane T/A Lane's Brooklyn Pharmacy, employed and had on the payroll of the said Brooklyn Pharmacy, one or more registered pharmacists who were then and still are duly certified by the plaintiff as qualified to practice pharmacy in the State of North Carolina, but who were not, at the time of the above set forth acts, present on the premises of the said Brooklyn Pharmacy.

"ELEVENTH: The facts set forth in the foregoing paragraphs 6, 7, 8, 9 and 10, with regard to the 'filling' of prescriptions and operations of drugstores constitute a course of conduct which has, from time to time, over a period of many years, been the common practice in a great many of the drugstores throughout the State of North Carolina. The plaintiff has taken action in cases coming to its attention in which it could be established that such a course of conduct was being followed.

"TWELFTH: The facts above set forth in paragraphs 6, 7, 8, 9, 10 and 11 constitute all of the facts upon which the plaintiff North Carolina Board of Pharmacy contends that the defendants violated the Laws of the State of North Carolina with relation to practice of Pharmacy and on which this action is based."

Upon these facts, and conclusions of law based thereon, the court entered judgment as follows:

"NOW, THEREFORE, upon the foregoing findings of fact and conclusions of law, IT IS ORDERED, DECREED AND ADJUDGED that the defendants W. Ronald Lane T/A Lane's Brooklyn Pharmacy and John W. Baldwin be, and they are hereby restrained and enjoined from employing others than licensed pharmacists to perform such services as are hereinbefore set out *or performing any thing or act in violation of the provisions of General Statutes, Chapter 90.* (Our italics)

"IT IS FURTHER ORDERED, DECREED AND ADJUDGED that the costs of this action be taxed against the defendants."

Defendants excepted and appealed, assigning errors.

*Bailey & Dixon for plaintiff, appellee.*
*J. H. Ferguson for defendants, appellants.*

BOBBITT, J.   The agreed facts, on which the case was submitted, constitute the sole basis for decision. *Eason v. Dew,* 244 N.C. 571, 94 S.E. 2d 603; *Edwards v. Raleigh,* 240 N.C. 137, 81 S.E. 2d 273; *Greensboro v. Wall,* 247 N.C. 516, 522, 101 S.E. 2d 413. Do these facts support the court's conclusions of law and judgment?

Statutory provisions regulating the practice of pharmacy in North Carolina comprise GS Ch. 90, Art. 4.

"Where the practice of a profession or calling requires special knowledge or skill and intimately affects the public health, morals, order, or safety, or the general welfare, the Legislature may prescribe reasonable qualifications for persons desiring to pursue such profession or calling, and require them to demonstrate their possession of such qualifications by an examination on the subjects with which such profession or calling has to deal as a condition precedent to the right to follow such profession or calling." *S. v. Ballance,* 229 N.C. 764, 770, 51 S.E. 2d 731, and cases cited.

Unquestionably, the General Assembly, in the exercise of the police power of the State, may regulate the practice of pharmacy. 17A Am. Jur., Drugs and Druggists Sec. 13; 28 C.J.S., Druggists Sec. 2. As to this, decisions in other jurisdictions are in full accord. *S. v. Collins* (N.M.), 297 P. 2d 325; *Louisiana Board of Pharmacy v. Smith,* 65

So. 2d 654; *Beeman v. Board of Pharmacy* (Mich.), 35 N.W. 2d 354; *Rosenblatt v. Board of Pharmacy* (Cal.), 158 P. 2d 199; *Stewart v. Robertson* (Ariz.), 40 P. 2d 979; Ex parte Gray (Cal.), 274 P. 974; *Reppert v. Utterback* (Iowa), 217 N.W. 545; *S. v. Wood* (S. D.), 215 N.W. 487; *Tucker v. Board of Pharmacy*, 217 N.Y.S. 217; *S. v. Hamlett* (Mo.), 110 S.W. 1082; *S. v. Hovorka* (Minn.), 110 N.W. 870; *Board of Pharmacy v. Cassidy* (Ky.), 74 S.W. 730; *S. v. Heinemann* (Wis.), 49 N.W. 818; *State Board of Pharmacy v. Matthews*, 197 N.Y. 353, 26 L. R. A. (N.S.) 1013; *People v. Roemer*, 153 N.Y.S. 323; *S. v. Kumpfert* (La.), 40 So. 365; *S. v. Forcier* (N. H.), 17 A. 577; *S. v. Foutch* (Tenn.), 295 S.W. 469, 54 A. L. R. 725; *Commonwealth v. Zacharias* (Pa.), 37 A. 185.

In *Thomas v. Board of Pharmacy*, 152 N.C. 373, 67 S.E. 925, and *McNair v. Board of Pharmacy*, 208 N.C. 279, 180 S.E. 78, in which the plaintiff, *in his efforts to obtain license,* sought a writ of mandamus to require the Board of Pharmacy to perform certain acts, the constitutionality of the legislation was not challenged. However, in *Thomas v. Board of Pharmacy, supra,* Clark, C. J., said: "The selling of drugs is an important matter to the health and lives of the public. The Legislature has carefully guarded it, by the provisions to be found in Rev., 4471-4490."

Nothing appears in the record to indicate that either defendant at any time sought to obtain license as a registered pharmacist or assistant pharmacist. Defendants' assignments of error, purporting to attack broadside the constitutionality of GS Ch. 90, Art. 4, are without merit. GS 90-85.1, the only specific provision challenged by defendants, is considered below.

Defendants' primary position is that the practice engaged in by Baldwin, the unlicensed employee, and caused or permitted by Lane, the employer-owner, of which the specific transaction of August 5, 1954, is typical, does not violate GS 90-71 and GS 90-72.

GS 90-71, in pertinent part, provides:

"It shall be unlawful for any person not licensed as a pharmacist or assistant pharmacist within the meaning of this article to conduct or manage any pharmacy, drug or chemical store, apothecary shop or other place of business for the retailing, compounding, or dispensing of any drugs, chemicals, or poison, or for the compounding of physicians' prescriptions, or to keep exposed for sale at retail any drugs, chemicals, or poison, except as hereinafter provided, or for any person not licensed as a pharmacist within the meaning of this article to compound, dispense, or sell at retail any drug, chemical, poison, or pharmaceutical preparation upon the prescription of a physician or otherwise, or to compound physicians' prescriptions except as an

aid to and under the immediate supervision of a person licensed as a pharmacist or assistant pharmacist under this article. Provided, that during the temporary absence of the licensed pharmacist in charge of any pharmacy, drug or chemical store, a licensed assistant pharmacist may conduct or have charge of said store. And it shall be unlawful for any owner or manager of a pharmacy or drugstore or other place of business to cause or permit any other than a person licensed as a pharmacist or assistant pharmacist to compound, dispense, or sell at retail any drug, medicine, or poison, except as an aid to and under the immediate supervision of a person licensed as a pharmacist or assistant pharmacist."

G.S. 90-72 provides:

"If any person, not being licensed as a pharmacist or assistant pharmacist, shall compound, dispense, or sell at retail any drug, medicine, poison, or pharmaceutical preparation, either upon a physician's prescription or otherwise, and if any person being the owner or manager of a drugstore, pharmacy, or other place of business, shall cause or permit anyone not licensed as a pharmacist or assistant pharmacist to dispense, sell at retail, or compound any drug, medicine, poison, or physician's prescription contrary to the provisions of this article, he shall be deemed guilty of a misdemeanor, and fined not less than twenty-five nor more than one hundred dollars."

The General Assembly has prescribed the requirements an applicant must meet to become licensed as a registered pharmacist. G.S. 90-61, G.S. 90-63; G.S. 90-64. With two exceptions (G.S. 90-61, G.S. 90-64), not relevant here, a person eligible therefor must submit to and pass an examination prepared and furnished by the Board of Pharmacy "as to his qualifications for registration as a licensed pharmacist." G.S. 90-61.

After January 1, 1939, the Board of Pharmacy had no authority to issue "an original certificate to any person as a registered assistant pharmacist"; but a person registered as an assistant pharmacist prior to that date was permitted to continue to practice as such registered assistant pharmacist. G.S. 90-63. (Note: Ch. 52, Public Laws of 1921, provided for the licensing of registered assistant pharmacists. However, except as to those who were licensed as registered assistant pharmacists prior to January 1, 1939, this provision was eliminated by Ch. 402, Public Laws of 1937, now G.S. 90-63.)

The fact that Baldwin, prior to August 5, 1954, had had over fourteen years' experience in filling and compounding prescriptions as an aid to and under the supervision of registered pharmacists, is beside the point. This is not a proceeding to establish his right to be licensed as a registered pharmacist or assistant pharmacist.

Since it was agreed that the tablets called for in the prescription "are a drug within the meaning of the use of that term" in G.S. 90-71 and 90-72, we put aside as irrelevant the fact that the tablets were prescribed by the trade name of the manufacturer and that all Baldwin did was to remove tablets from the duly labeled stock bottle, place them in a small container and deliver them to the ultimate consumer.

G.S. 90-71 and G.S. 90-72, which relate to the same subject matter, are to be construed *in pari materia. S. v. Hill*, 236 N.C. 704, 73 S.E. 2d 894, and cases cited.

These statutes, when so construed, provide that it shall be unlawful (G.S. 90-71) and a misdemeanor (G.S. 90-72) for any person not licensed as a pharmacist or assistant pharmacist to compound, *dispense* or *sell at retail* any drug, etc., upon the prescription of a physician or otherwise, "or to compound physicians' prescriptions *except as an aid to and under the immediate supervision of a person licensed as a pharmacist or assistant pharmacist under this article.*" G.S. 90-71. (Our italics) Although the punctuation is inexact, we think it clear that the exception (italicized words) applies to dispensing drugs and selling drugs at retail as well as to compounding physicians' prescriptions. This view is supported by this further provision: "And it shall be unlawful for any owner or manager of a pharmacy or drugstore or other place of business to cause or permit any other than a person licensed as a pharmacist or assistant pharmacist to compound, dispense, or sell at retail any drug, medicine, or poison, except as an aid to and under the immediate supervision of a person licensed as a pharmacist or assistant pharmacist." G.S. 90-71.

Defendants contend that, notwithstanding no registered pharmacist was present in person, Baldwin should be deemed "under the immediate supervision" of registered pharmacists, namely, the registered pharmacists then on duty in Lane's other stores, whom he could contact by telephone or by messenger for advice and directions. This contention poses the basic question for decision.

If defendants' said contention were accepted, the unlicensed person, in deciding whether he needed the advice or directions of a registered pharmacist, would necessarily be the sole judge of his own qualifications and competency. The exception relating to an unlicensed person contemplates that his service is to be rendered "as an aid to" as well as "under the immediate supervision of" a licensed pharmacist. G.S. 90-71 contains a proviso "that during the temporary absence of the licensed pharmacist in charge of any pharmacy, drug or chemical store, a licensed assistant pharmacist may conduct or have charge of said store." The construction contended for by defendants would

write into the statute a provision it does not contain, namely, a provision to the effect that during the temporary absence of the licensed pharmacist an unlicensed person may conduct or have charge of the store.

Moreover, the legislative history of G.S. 90-71 evinces the legislative intent. The original act, Ch. 355, Sec. 3, Public Laws of 1881, used these words: "except under the supervision of a registered pharmaceutist, . . ." The amendment of 1905, Ch. 108, Sec. 4, Public Laws of 1905, introduced the present provision: "except *as an aid to* and under the *immediate* supervision of a person licensed as a pharmacist." (Our italics)

In *State v. Mullenhoff* (Iowa), 37 N.W. 329, the statute "forbid any one not a registered pharmacist to dispense medicine, except as an aid to, and under the supervision of, a registered pharmacist." Beck, J., writing the opinion, states: "The nonregistered clerk may, under the law, aid the pharmacist under his supervision. This implies that the clerk shall assist the pharmacist, who shall supervise the clerk's work. It seems to us that the pharmacist must have 'immediate personal direction and supervision' of the work." This decision (1888) indicates that our interpretation of G.S. 90-71 has been associated with the words presently used therein for at least seventy years.

Our conclusion, in agreement with the court below, is that the statute makes it unlawful for an unlicensed person either to compound or to dispense or to sell at retail any drug, either upon a physician's prescription or otherwise, unless he acts *in the immediate physical presence* of a licensed pharmacist or assistant pharmacist and *under his personal supervision and direction.*

Having determined that Baldwin, the unlicensed employee, and Lane, the employer-owner, by engaging in the practice typified by the specific transaction of August 5, 1954, acted in violation of G.S. 90-71 and G.S. 90-72, we consider defendants' remaining contention.

The said acts of the defendants, unlawful under G.S. 90-71, are criminal offenses (misdemeanors, punishable by fine) under G.S. 90-72. Plaintiff seeks no relief for what has been done but seeks to restrain defendants from continuing such unlawful practice in the future. Is plaintiff entitled to such injunctive relief?

"Ordinarily, injunction will not lie to prevent the perpetration of a crime." *Fayetteville v. Distributing Co.*, 216 N.C. 596, 5 S.E. 2d 838. The established general rule is that there is no equitable jurisdiction to enjoin the commission of a crime. *Mills v. Cemetery Park Corp.*, 242 N.C. 20, 28, 86 S.E. 2d 893; *Dare County v. Mater*, 235 N.C. 179, 181, 69 S.E. 2d 244; *Clinton v. Ross*, 226 N.C. 682, 688, 40 S.E. 2d 593, and cases cited; *Matthews v. Lawrence*, 212 N.C. 537,

538, 193 S.E. 730; *Hargett v. Bell,* 134 N.C. 394, 46 S.E. 749.

Plaintiff bases its right to injunctive relief on G.S. 90-85.1, which provides:

"The Board of Pharmacy may, if it shall find that any person is violating any of the provisions of this article, and after notice to such person of such violation, apply to the superior court for a temporary or permanent restraining order or injunction to restrain such person from continuing such illegal practices. If upon such application, it shall appear to the court that such person has violated, or is violating, the provisions of this article, the court may issue an order restraining any further violations thereof. All such actions by the Board for injunctive relief shall be governed by the provisions of article 37 of the chapter on 'Civil Procedure': Provided, such injunctive relief may be granted regardless of whether criminal prosecution has been or may be instituted under any of the provisions of this article."

Defendants challenge this statutory provision, as applied to future criminal acts, as unconstitutional. Their contention is that punishment for violation of such injunction upon the basis of findings of fact made by the court without a jury would in effect constitute punishment for a criminal offense, thereby depriving them of the constitutional safeguards of indictment, trial by jury, etc., to which they are entitled under Art. I, Secs. 12 and 13, Constitution of North Carolina.

In *Matthews v. Lawrence, supra,* where the plaintiff (Board of Photographic Examiners) sought to enjoin the defendant from practicing photography, no statute authorized the plaintiff to enforce the statute by civil action for injunction. In *Mills v. Cemetery Park Corp., supra,* heard on demurrer, the allegations were held insufficient to entitle plaintiff to enjoin defendant's alleged practice of law without a license, a criminal offense under G.S. 84-4 and G.S. 84-10; but it is noted that G.S. 84-7 conferred upon solicitors, not upon private individuals, the right to bring an action (in the name of the State) for injunctive relief. (Compare: *Seawell, Attorney-General, v. Motor Club,* 209 N.C. 624, 184 S.E. 540, where the unauthorized practice of law was enjoined.) In *Clinton v. Ross, supra,* it was held that G.S. 160-179, a part of the Zoning Act, G.S. Ch. 160, Art. 14, was not a statute of general application but authorized a suit in equity to restrain the erection, maintenance, or repair of any building, structure, or land used "in violation of this article or of any ordinance or other regulation made under authority conferred thereby." It is noted that the authority for injunctive relief conferred by G.S. 160-179 differentiates the decision in *Elizabeth City v. Aydlett,* 200 N.C. 58, 156 SE 163, from the earlier decision, *Elizabeth City v. Aydlett,* 198 N.C. 585, 152 S.E. 681. It is noted further that the violation of the Raleigh Zoning Ordi-

nance was enjoined in Raleigh v. Morand, 247 N.C. 363, 100 S.E. 2d 870, upon authority of G.S. 160-179.

This is a civil action, expressly authorized by G.S. 90-85.1; and we hold that the validity of G.S. 90-85.1 is not impaired by the fact that the same acts that would constitute wilful violations of the injunction would also constitute a basis for criminal prosecutions. The contentions now made by defendants were so fully considered and answered in *Board of Medical Examiners v. Blair* (Utah), 196 P. 221, that we quote with approval this excerpt from the opinion of Gideon, J., viz.:

"It may be conceded that the power to enjoin the threatened commission of ordinary crimes has never been recognized by the courts. But we are here dealing with the right or power of the Legislature to enact and to provide means for the enforcement of regulations looking to the health of the community. If no other or worse results would or could follow the violation of the penal provisions of a statute than the arrest and punishment of any one violating such provisions, it might well be that the Legislature would not have the authority to provide a remedy by injunction. As indicated, the statute was enacted, not to provide a means of punishing those violating its provisions, but to protect the community from what, in the judgment of the Legislature, was or might be detrimental to the public health. The power of the court, while not often called into force, to prevent such an injury, has been repeatedly recognized in the decisions of the courts of this country. The authority is recognized by the quotation from *Allopathic State Board of Medical Examiners v. Fowler*, 50 La. Ann. 1358, 24 South. 809, by this court in the Freenor Case, as follows:

" 'The General Assembly, having the authority to attach prior conditions to the practice of medicine, was vested with the right to enforce enactments on that subject by prescribing penalties for violations of the same, either by fine, by imprisonment, or by civil remedies.'

"See, also, (Citations).

"If it be insisted, as it is, that the violation of the injunction may result in the imprisonment of the defendant, the punishment would not be for the violation of a statute, but for violating an order of the court. As concisely stated by the Supreme Court of Indiana in *State v. Roby, supra,* at page 189 of 142 Ind., at page 152 of 41 N.E. (33 L. R. A. 213, 51 Am. St. Rep. 174):

"'It is further contended that, in case of the violation of an injunction under the civil remedy part of the act, the court might fine the defendant for contempt, for disobeying the order of injunction, and

that would make him liable to double punishment. The statement of the proposition furnishes a sufficient answer thereto. In that case he would not be punished for crime, but for contempt of court.' "

See, also, 43 C. J. S., Injunctions Sec. 124; 28 Am. Jur., Injunctions Sec. 149; *S. v. Jewett Market Co.* (Iowa), 228 N.W. 288.

In *Fayetteville v. Distributing Co., supra,* where the right to injunctive relief was upheld as authorized by G.S. 160-179, a part of the Zoning Act, G.S. Ch. 160, Art. 14 *Seawell, J.,* referring to the contention that criminal prosecution provided an adequate remedy at law, said: "It (criminal prosecution) is not intended, nor is it adequate, to protect society or the individuals or groups within it, or persons within a congested territory, from acts which expose them to special danger or which constitute a menace to the safety, health, and welfare of the community, although indeed these acts may *incidentally* become violations of law. In order to adequately deal with these evils a resort to the police power should mean more than merely setting in motion that highly specialized vehicle of its exercise—the criminal law—since in many instances this must be found inadequate to sustain the power. The fact that an act from which such injury may come, either to a private citizen or to the public at large, is denounced either in an ordinance or in the law as criminal *does not immunize its author from other appropriate remedy. . . .* Equity is invoked, not to prevent a crime, but to maintain a right." (Our italics)

It is noteworthy that Ch. 229, Session Laws of 1947, now G.S. 90-85.1, was enacted for the reasons indicated by this preamble: "WHEREAS, the illegal practice of pharmacy involving the use of many dangerous drugs and the internal use of these drugs and medicines by the public is eminently dangerous to the public health and welfare, and such illegal practice is hereby declared to be against public policy." It is quite evident that the General Assembly did not consider criminal prosecution an adequate remedy for the protection of the public health and welfare.

Whether the practice engaged in by Baldwin, the unlicensed employee, and caused or permitted by Lane, the employer-owner, of which the specific transaction of August 5, 1954, is typical, was in violation of G.S. 90-71 and G.S. 90-72, was the only question presented to and decided by the court below. Hence, the portion of the judgment reading, "or performing any thing or act in violation of the provisions of General Statutes, Chapter 90," is too broad and should be stricken therefrom. *S. v. Jewett Market Co., supra.* It is so ordered. As so modified, the judgment of the court below is affirmed.

Modified and affirmed.