AHOSKIE PRODUCTION CREDIT ASSOCIATION v. E. D. WHEDBEE; MARIETTA H. WHEDBEE; RICH SQUARE BONDED WAREHOUSE; Y. D. PENDLETON, MANAGER OF RICH SQUARE BONDED WAREHOUSE; A. B. FAIRLEY, STATE WAREHOUSE SUPERINTENDENT; EDWIN GILL, TREASURER OF THE STATE OF NORTH CAROLINA; JONES, SON & COMPANY, INC.; AND INDEMNITY INSURANCE COMPANY OF NORTH CAROLINA.

(Filed 14 October, 1959.)

1. Controversy Without Action § 2—

In a controversy without action the court is without authority to find additional facts or draw factual conclusions from the evidentiary facts.

2. Controversy Without Action § 1:  Trial § 54—

Where the parties agree that stipulated facts should constitute and be the evidence in the case and waive trial by jury and agree that the judge upon the facts should determine the rights and liabilities of the parties, the cause is not a controversy without action under G.S. 1-250 et seq., and the power of the court to find additional facts must be determined in accordance with the agreement of the parties submitting the controversy to the court.

3. Trial § 54—

Where the parties agree that the stipulated facts should constitute and be the evidence in the case and agree that the court should determine the rights and liabilities of the parties upon said facts, and the facts agreed are insufficient predicate for a judgment, but, considered as evidentiary facts, are sufficient to support diverse inference as to the determinative inference of fact, the court has authority to draw the inference of fact in the same manner as would a jury.

4. Warehousemen § 3b—

The duty of a local manager of a warehouse accepting cotton for storage to satisfy himself that the depositor of the commodity has good title thereto before issuing negotiable warehouse receipts therefor, G.S.

106-442, places the burden upon the local manager to exercise that degree of diligence which an ordinarily prudent person, under the same circumstances and charged with like duty, would exercise.

**5. Same— Facts held sufficient to support inference that warehouseman exercised due diligence in issuing negotiable receipts.**

The manager of a warehouse, having had prior dealings with the depositor of cotton, issued negotiable receipts therefor in reliance on his belief in the integrity of such depositor, and the depositor's representations and written warranties that there were no liens or valid claims outstanding against the cotton, but the manager failed to examine the records in the office of the register of deeds, which would have shown registered liens against the commodity. *Held:* Whether the manager exercised the care of a reasonably prudent person in issuing the negotiable receipts is susceptible to different conclusions by reasonable people, and the facts are sufficient to support the inference of fact that the manager exercised due diligence.

**6. Warehousemen § 3d—**

The depositor of a commodity is primarily liable for loss sustained by reason of the issuance of negotiable receipts for the commodity upon the depositor's representations and warranties that the commodity was free and clear of all liens and encumbrances, and the liability of the guaranty fund, G.S. 106-435, is secondary.

HIGGINS, J., not sitting.

PARKER, J., dissenting.

APPEAL by defendant Gill, Treasurer, from the judgment rendered by *Bone, J.,* out of term and out of the District, by consent, at NASHVILLE on 27 June 1959.

Plaintiff, for cause of action, alleged: Defendants Whedbee, residents of Hertford County, owned and operated farms in Hertford and Northampton Counties; plaintiffs loaned them $16,000 to plant, cultivate, and harvest crops; the monies so loaned were secured by crop liens duly recorded in said counties; defendants Whedbee delivered to defendant Rich Square Bonded Warehouse, which is operated pursuant to the provisions of Art. 38, c.106 of the General Statutes, thirty-seven bales of cotton, a portion of the crops included in the recorded liens held by plaintiff; negotiable warehouse receipts for said cotton were issued to Whedbee as authorized by G.S. 106-441; defendant Fairley is the State Warehouse Superintendent; defendant Pendleton is manager of Rich Square Bonded Warehouse; a demand for the cotton so stored and a refusal to deliver. Plaintiff demanded judgment for the cotton or its value as against defendants Whedbee and defendant Pendleton and the surety on his bond as warehouse manager, and if Pendleton should not be adjudged liable, against Fairley, as State Warehouse Superintendent, and if he be adjudged

not liable, against defendant Gill, as Treasurer, and the fund provided by G.S. 106-435.

Indemnity Insurance Company is the surety for defendant Pendleton on the bond required by G.S. 106-434.

Defendants Gill and Fairley denied liability, asserting that if liability existed against any one other than defendants Whedbee, defendant Pendleton and his bond were primarily liable.

Defendants Pendleton and Rich Square Bonded Warehouse denied liability. They assert that the cotton was accepted for storage and the warehouse receipts were issued only after Pendleton had satisfied himself that Whedbee had good title to the same.

The parties submitted an agreed statement of facts to the court. This statement establishes the execution and recordation of the crop liens; Whedbee's debt to plaintiff; the operation of the warehouse as a part of the State system; the positions of Fairley and Pendleton, and the bond given by Pendleton; that Whedbee delivered thirty-seven bales of cotton to Pendleton as manager for storage.

The agreed statement shows thirty-seven bales delivered with the dates of delivery for thirty-six. Negotiable receipts were issued for the cotton. The dates on which the warehouse receipts issued appear in the agreed statement. In one instance the receipt issued the day before the cotton was delivered. The remaining receipts were issued subsequent to delivery, varying from three to thirty-five days after delivery. The value of the cotton was stipulated, as was the fact that the warehouse receipts had been negotiated. It was stipulated: "It is not contended by any of the parties that A. B. Fairley as State Warehouse Superintendent was negligent in the performance of his duties or that he failed to perform any duty required of him by law."

The 16th and 17th stipulations read as follows:

"16. Neither Y. D. Pendleton, Manager of Rich Square Bonded Warehouse, nor H. T. Jones, his assistant manager, made any investigation of the records in the office of the Register of Deeds of Hertford County, or in the office of the Register of Deeds of Northampton County, in an effort to determine whether or not there were any liens there recorded on said cotton.

"17. Except as to the two bales having Gin Numbers 4177 and 4703 (not here in controversy), Y. D. Pendleton, Manager of Rich Square Bonded Warehouse, issued official negotiable warehouse receipts to E. D. Whedbee or Bearer for the cotton accepted for storage from him, only after satisfying himself in the following manner that the depositor, E. D. Whedbee, had good title to the same:

"(a) Y. D. Pendleton had known E. D. Whedbee since 1948, had

stored cotton for him in 1948 and 1956, had known his family for a number of years and believed Mr. Whedbee to be a man of honesty and integrity.

"(b) E. D. Whedbee made numerous oral assurances to Y. D. Pendleton and to his assistant manager, M. T. Jones, that he, E. D. Whedbee, had good title to the cotton delivered for storage for which receipts were being issued and that there were no liens of any kind on said cotton which representations were believed and relied upon in issuing receipts.

"(c) Delivery of each official negotiable warehouse receipt was made only after E. D. Whedbee had signed a form note used by the Commodity Credit Corporation, which note contained the following language: 'The producer understands and agrees that the loan is made subject to and in consideration of the representations, warranties, and agreements contained in the Loan Agreement on the reverse side hereof . . .'

"The warranties referred to on the reverse side included: '. . . the producer, with full knowledge of the provisions of section 15(a) of the Commodity Credit Corporation Act, represents and warrants to all holders of the note as follows:

" ' . . .

" '(b) That he has the legal right to pledge the cotton as collateral security for the loan: . . .

" ' . . .

" '(f) That the cotton is free and clear of all liens and encumbrances, except warehouseman's liens; and that all persons who claimed to have any liens or encumbrances on the cotton (except the warehouseman), and all landlords, whether or not they claimed landlord's liens on the cotton, have executed the lienholder's waiver on the reverse side hereof.'

"(d) No person communicated to Y. D. Pendleton or to M. T. Jones, his assistant manager, the fact that said liens were in existence and they were without actual knowledge thereof."

The court in its judgment recited the agreed statement of facts which it incorporated as a part of the judgment. After reciting the agreed facts it found: "23. Y. D. Pendleton, Manager of Rich Square Bonded Warehouse issued said official negotiable warehouse receipts to E. D. Whedbee or Bearer for 35 bales of cotton having Gin Numbers (not material) only after having used such diligence as would have been used by an ordinarily prudent person, under the same circumstances and charged with a like duty, to satisfy himself that the depositor E. D. Whedbee had good title to the same."

Based on the facts agreed and found by the court, judgment was entered against defendants Whedbee and Gill, the recovery as against Gill to be paid from the indemnity fund provided by G.S. 106-435.

Defendant Gill excepted to the finding that Pendleton used such diligence as would have been exercised by an ordinarily prudent person under the same circumstances and charged with a like duty; he likewise excepted to the conclusions of law and appealed from the judgment rendered.

*Cherry & Cherry for plaintiff, appellee.*

*Attorney General Seawell and Assistant Attorney General Bruton and Charles D. Barham of Staff for defendant, appellant.*

*Gay, Midyette & Turner for Y. D. Pendleton, Manager of Rich Square Bonded Warehouse, Jones, Son & Company, Inc., and Rich Square Bonded Warehouse, appellees.*

*T. Lacy Williams for Indemnity Insurance Company of North America, appellee.*

RODMAN, J. The exception to finding of fact no. 23, made by the court, raises two questions: (1) Was the court authorized to find any fact in addition to the facts agreed; (2) if so, were the agreed facts sufficient to support the factual inference (finding no. 23) which the court drew from the agreed facts?

The agreement in this case provides: "It is agreed that the foregoing facts shall constitute and be the evidence in this case and that trial by Jury is hereby waived and the Judge shall upon said facts determine the rights and liabilities of the parties hereto."

In a controversy without action the court is without authority to find additional facts, *Greensboro v. Wall,* 247 N.C. 516, 101 S.E. 2d 413; nor may it do so when the parties have agreed upon facts which they deem determinative of the controversy. This limitation of authority prohibits the drawing of factual conclusions from the evidentiary facts. *Smith v. Smith,* 248 N.C. 194, 102 S.E. 2d 868; *Board of Pharmacy v. Lane,* 248 N.C. 134, 102 S.E. 2d 832; *Eason v. Dew,* 244 N.C. 571, 94 S.E. 2d 603; *Blowing Rock v. Gregorie,* 243 N.C. 364, 90 S.E. 2d 898; *Sparrow v. Casualty Co.,* 243 N.C. 60, 89 SE. 2d 800; *Marx v. Brogan,* 188 N.Y. 431, 11 Ann. Cas. 145; 2 Am. Jur. 384. Especially is this true when the agreement expressly prohibits the court from drawing inferences or factual conclusions. *Petros v. Superintendent & Inspector of Buildings,* 28 N.E. 2d 233, 128 A.L.R. 1210.

This is not a controversy without action authorized by G.S. 1-250 *et seq.* The authority of the court, if any, to make findings in addi-

tion to the facts agreed to by the parties must be found in the agreement of the parties submitting the controversy to the court.

Litigants may waive a jury trial and permit the court to find the facts. G.S. 1-184. The court must, of course, do so on the evidence. They may agree upon the evidence and permit the court to draw factual conclusions. Here the parties agreed that the stipulated facts "shall constitute and be the evidence" which a jury would hear and then stipulated that a jury trial was waived.

Until the ultimate fact of due care was determined, no judgment could be rendered, and the agreement with respect to the evidentiary facts was a useless effort. *Seminary v. Wake County,* 248 N.C. 420, 103 S.E. 2d 472; *Ellison v. Hunsinger,* 237 N.C. 619, 75 S.E. 2d 884; *Tucker v. Ashcraft,* 189 N.C. 546, 127 S.E. 531. The practice of stipulating evidentiary facts and permitting the court to find ultimate facts therefrom is not unknown. "If the parties intend that the court shall have authority upon a case agreed to make such inference, they must make an agreement to that effect as is frequently, if not usually, done in England in making up a 'special case.' " *Sawyer v. Corse,* 17 Gratt. (Va.) 230; 2 Am. Jur. 385. The agreement authorized the court to find fact no. 23.

We must determine whether the agreed facts were sufficient to support the factual conclusion that Pendleton exercised such care as to relieve him of liability.

If more than one inference can be drawn from the stipulated facts, the answer to the question as to due care was for the jury, or the court on waiver of jury trial. *Turnage v. Morton,* 240 N.C. 94, 81 S. E. 2d 135; *McCrowell v. R. R.,* 221 N.C. 366, 20 S.E. 2d 352; *Warren v. Insurance Co.,* 217 N.C. 705, 9 S.E. 2d 479; *Tucker v. Ashcraft, supra.*

What is the obligation assumed by the manager of a warehouse operating pursuant to the provisions of Art. 38, c. 106 of G.S.? The answer is to be found in the present statute considered in the light of its history. Basic provisions of this article were first enacted in 1919, c. 168 P.L. 1919, C.S. 4907 set eq. Sec. 12 of that Act (C.S. 4918) provided: "The said receipt carries absolute title to the cotton, it being the duty of the manager accepting same for storage, by inspection of the register of deeds' office, to ascertain whether there are on file crop mortgages or liens for rent or laborer's liens covering said cotton before he accepts same and issues a receipt." A local manager acting under that Act failed in the performance of his duty if he failed to examine the records for recorded liens, and for loss sustained by breach of his duty he and his bond were liable.

The original Act was amended by c. 137, P.L. 1921. So far as here pertinent, that Act provided: "The said official negotiable receipt carries absolute title to the cotton, it being the duty of the local manager accepting same for storage to satisfy himself as to the title to the same by requiring the depositor of the cotton to sign a statement appearing on the face of the official receipt to the effect that there is no lien, mortgage, or other valid claim outstanding against such cotton, and any person falsely signing such a statement shall be punished as provided for false pretenses, Consolidated Statutes, section four thousand two hundred and seventy-seven."

The Legislature in a two-year period traveled from one extreme to the other with respect to the duty of a local manager in determining the title to the cotton for storage. Both in 1919 and 1921 it fixed the standard of due care. The standard fixed in 1921 continued to measure the duty of a local manager in receiving cotton for more than thirty years. He was authorized to rely upon a signed statement which, if false, was criminal. The agreed facts show that Whedbee signed statements called for in the Commodity Credit Act. A false statement is by that Act made a crime.

The Legislature in 1955 (c. 523, S.L. 1955) removed the specifications with respect to the manager's duty. The statute (G.S. 106-442) now reads: "The said official negotiable receipt carries absolute title to the cotton or other agricultural commodity, and it is the duty of the local manager accepting same for storage to satisfy himself that the depositor has good title to the same."

Appellant would have us construe the present law as equivalent to the original Act which made the local manager an insurer against the recorded liens. We do not so construe legislative intent. Had the Legislature intended to require an examination for recorded liens, it would have been a simple matter to have inserted the language contained in the 1919 Act.

The statute now requires the local manager to satisfy himself. That implies that he must act as a prudent person and exercise reasonable care under existing conditions. That is the obligation which an employee owes to his employer. *Ellison v. Hunsinger, supra; Trustees v. Banking Co.,* 182 N.C. 298, 109 S.E. 6; *Ivey v. Cotton Mills,* 143 N. C. 189; 35 Am. Jur. 530; 56 C.J.S. 480, 481.

Whether Pendleton acted under the circumstances of this case as a reasonably prudent person would have acted is a question with respect to which different people can reach different conclusions. Hence the court, acting as a jury, had the duty of answering the question raised by the agreed facts, namely: Did Pendleton exercise that de-

gree of care, under all of the facts, which a reasonably prudent person would have exercised? Its answer determines the controversy since it found Pendleton acted as a prudent person, and the law imposes no greater duty.

The liability adjudged against the defendants Whedbee is primary. The liability of the guaranty fund is secondary. The judgment will be amended to expressly so provide.

Modified and affirmed.

HIGGINS, J., not sitting.

PARKER, J., dissenting. All the parties submitted to Judge Bone, what they called "AGREED STATEMENT OF FACTS." After setting forth 21 paragraphs of facts, this agreed statement of facts ends with this language

"It is agreed that the foregoing facts shall constitute and be the evidence in this case and that trial by Jury is hereby waived and the Judge shall upon said facts determine the rights and liabilities of the parties hereto."

Then follows the signatures of counsel for all the parties.

Judge Bone's judgment begins with this language:

"This cause coming on to be heard before Honorable Walter J. Bone, Judge holding the Courts of the Sixth Judicial District, at 10:00 A. M. on the 27th day of June, 1959, at the Courthouse in Nashville, North Carolina, the parties having agreed that the same be heard before said Judge and at said time and place, that trial by jury is waived, that an Agreed Statement of Facts shall constitute and be the evidence in this case and that the Judge upon said facts shall determine the rights and liabilities of the parties hereto, and it appearing to the satisfaction of the Court and the Court finding facts as follows, to wit:"

According to the record the only evidence before Judge Bone was this "AGREED STATEMENT OF FACTS:"

I can find nothing in the briefs filed by counsel to indicate that they, or anyone of them, had any idea that Judge Bone was hearing the case on anything except the "AGREED STATEMENT OF FACTS" in accordance with G. S. 1-250 *et seq.* For instance, the brief filed for appellant Gill has this at the beginning after Question Involved: "STATEMENT OF CASE. This civil action was heard by consent, upon the pleadings and Agreed Statement of Fact." The brief filed for Indemnity Insurance Company of North America, appellee, says the first question involved is: "Did the court err: 1. In including Findings of Fact 23 in the judgment, and is it supported by

the evidence set out in the Agreed Statement of Facts?" The brief of plaintiff appellee has this language: "Under and by virtue of said agreed statement of facts, this action was heard out of turn and out of the district, by consent of the parties, and judgment rendered, etc."

I do not agree with the statement in the majority opinion: "This is not a controversy without action authorized by G. S. 1-250 *et seq.*"

It is true that the parties may waive a jury trial. G.S. 1-184. When that is done, the Judge shall give his decision in writing, containing a statement of the facts found and the conclusions of law separately. G.S. 1-185. The Agreed Statement of Facts states "trial by jury is hereby waived and *the Judge shall upon said facts determine the rights and liabilities of the parties hereto.*" The beginning of Judge Bone's judgment states "that trial by jury is waived, *that an Agreed Statement of Facts shall constitute and be the evidence in this case and that the Judge upon said facts shall determine the rights and liabilities of the parties hereto.*" From the above language it seems clear to me that the agreement was that Judge Bone was merely to determine the legal rights and liabilities of the parties upon an Agreed Statement of Facts, and was not authorized to find any further facts or to infer any further facts from those agreed upon. I consider the language used "a trial by jury is waived" as surplusage.

In *Sparrow v. Casualty Co.*, 243 N.C. 60, 89 S.E. 2d 800, it is said: "Where, as here, a case is tried on an agreed statement of facts, such statement is in the nature of a special verdict, admitting there is no dispute as to the facts, and constituting a request by each litigant for a judgment which each contends arises as a matter of law on the facts agreed, and consequently the court is not permitted to infer or deduce further facts from those stipulated."

The majority opinion is based on Judge Bone's finding of fact number 23, to the effect that Y. D. Pendleton, manager of Rich Square Bonded Warehouse, exercised due care in issuing official negotiable warehouse receipts to E. D. Whedbee, etc. This is a finding of fact that Judge Bone had no authority to make. The Agreed Statement of Facts contains no such fact.

As to whether or not Y. D. Pendleton exercised due care under the circumstances is still an open question for decision by a jury, or by a judge under waiver of a jury trial in accordance with G.S. 1-184.

The agreed case lacks completeness. As is said in *Trustees v. Banking Co.*, 182 N.C. 298, 109 S.E. 6: "A case agreed must state all the facts necessary to a decision, which this case does not do."

I would set aside the judgment, and remand the case for further proceedings. *New Bern v. White*, 251 N.C. 65, 110 S.E. 2d 446.